**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-81824-MC-MIDDLEBROOKS

FLORIDA STATE CONFERENCE OF BRANCHES
AND YOUTH UNITS OF THE NAACP, *et al.*,

     Plaintiffs,

v.

LAUREL M. LEE, *et al.*,

     Defendants.

_____/

**<u>ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL</u>**

THIS CAUSE comes before the Court upon Plaintiffs' Motion to Compel Non-Parties the Heritage Foundation and Heritage Action for America to Comply with Third-Party Subpoenas (DE 1), filed on September 27, 2021. The non-parties Heritage Foundation and Heritage Action for America ("Heritage") filed a Joint Response (DE 8), and Plaintiffs replied (DE 9). Because I find that the subpoenas target relevant information that is not protected by the First Amendment and that disclosure does not present an undue burden on Heritage, Plaintiffs' Motion to Compel is granted.

    **I.**    **Background**

On June 11, 2021, Plaintiffs Florida State Conference of Branches and Youth Units of the NAACP, Common Cause, and Disability Rights Florida ("Plaintiffs") filed an Amended Complaint in the Northern District of Florida challenging Florida's Senate Bill 90 as an illegal and unconstitutional burden on the right to vote. (DE 1-3 at ¶ 8). As part of that litigation, on August 6, 2021, Plaintiffs served third-party subpoenas on Heritage requesting production of "Documents and Communications reflecting, discussing, or otherwise relating to any rationale(s) for enacting

SB 90 or HB 7041," including documents and communications with Governor DeSantis and any member of the Florida State Legislature. (DE 1-5 at 20–21; DE 1-6 at 20–21). Plaintiffs also sought "Documents and Communications related to advocating or lobbying for legislation to address election reform, election security, or voter fraud following the 2020 General Election" and "All Documents and Communications assessing or predicting the potential impact of SB 90 or HB 7041 . . . on Black and Latino voters, people with disabilities, and elderly people." (*Id.*).

Heritage objected to Plaintiffs' document requests for four reasons. (DE 1-8 at 2–5). First, Heritage asserted that Plaintiffs are attempting to subpoena documents protected by the First Amendment because disclosure of the information requested by Plaintiffs "would chill the rights of speech, association, and petition" of its members. (*Id.* at 2–3). Second, Heritage argued that the requested documents are irrelevant because Heritage is not a party to the underlying litigation in the Northern District of Florida. (*Id.* at 4). Third, Heritage asserted that the subpoenas are not proportional to the needs of the case and that the requested documents could be obtained more easily through other means. (*Id.* at 5). Finally, Heritage argued that the subpoenas are too broad. (*Id.*).

On September 22, 2021, Plaintiffs filed a motion in the Northern District of Florida to compel Heritage to produce a subset of documents related to the subpoenas. (DE 1 at 6). However, under Federal Rule of Civil Procedure 45(b)(2), the party that serves a subpoena is to "move the court for the district *where compliance is required* for an order compelling production or inspection." Fed. R. Civ. P. 45(b)(2) (emphasis added). Because the subpoenas called for documents to be produced in West Palm Beach, Judge Walker in the Northern District of Florida denied Plaintiffs' motion without prejudice, and Plaintiffs refiled in this District. (DE 1 at 6).

## II. Legal Standard

"At any time, on notice to the commanded person, the [] party [serving a subpoena] may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). "[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules," including Rule 26. Fed. R. Civ. P. 45, Advisory Committee Note. Specifically, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

## III. Discussion

Resolution of Plaintiffs' Motion hinges on three questions: whether the information sought by the subpoenas is relevant to the underlying litigation in the Northern District of Florida; whether the burden imposed on Heritage is proportional to the needs of the case; and whether the First Amendment protects Heritage from disclosure. Each question is addressed below.

### a. The information Plaintiffs request in the subpoenas is relevant to Plaintiffs' case.

Heritage first contends that the information sought in Plaintiffs' subpoenas is not relevant to the underlying case because Heritage is not a party to that case and its position on voting reform is not probative of the Legislature's position. (DE 8 at 5–9). As support, Heritage relies heavily on *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321 (2021). (*Id.* at 7). In that case, the Supreme Court held that the "cat's paw" theory—a theory in employment discrimination cases under which a plaintiff's employer is held liable for the animus of a supervisor—does not apply to legislative bodies. *Brnovich*, 141 S. Ct. at 2350. The Supreme Court reasoned that "the legislators who vote to adopt a bill are not the agents of the bill's sponsors or proponents," and, as a result, there is not the same agency relationship that exists between an employer and a supervisor. *Id.*

3

Heritage argues that Plaintiffs are attempting to apply the "cat's paw" theory here to suggest that Heritage's "intent is probative of the 'Legislature's intent' and that any [Heritage] documents provided to legislators are imputed to them." (DE 8 at 8).

Plaintiffs assert that the requested documents are "of primary relevance to Plaintiffs' intentional discrimination" claims because they speak to the factors that courts must consider under *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1997). (DE 9 at 4). Under the *Arlington Heights* framework, in assessing intentional discrimination claims courts must consider: "(1) the impact of the challenged law; (2) the historical background; (3) the specific sequence of events leading up to its passage; (4) procedural and substantive departures; and (5) the contemporary statements and actions of key legislators," as well as more recently-added factors including: "(6) the foreseeability of the disparate impact; (7) knowledge of that impact, and (8) the availability of less discriminatory alternatives." *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1322 (11th Cir. 2021). According to Plaintiffs, the documents they request from Heritage would

> (1) [P]rovide circumstantial evidence about the "specific sequence of events leading up to" SB 90's passage, including the extent to which Heritage may have drafted provisions of the bill; (2) shed light on the legislature's reason for departing from its normal procedural sequence . . . (3) illuminate the legislators' understanding of the foreseeable impact of the law based on information provided by Heritage; and (4) put in context, or provide the basis of, key legislators' statements and actions.

(DE 9 at 4–5).

"[D]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266. While it is true that it would be improper for the Court to conclude that the goals and positions of Heritage should be imputed to the Legislature

and to admit the documents Plaintiffs request as revealing that intent, documents reflecting communications between Heritage and key legislators involved in the passage of Senate Bill 90 certainly constitute "circumstantial . . . evidence of intent" for purposes of Plaintiffs' intentional discrimination claims. *Id.* Federal Rule of Evidence 401[1] defines evidence as relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401(a)–(b). Plaintiffs have satisfied this very low bar because the information requested in the subpoenas could constitute circumstantial evidence of intentional discrimination to the extent that such intent can be gleaned from the events that led to the passage of Senate Bill 90.

Circumstantial evidence of this nature could be relevant and therefore discoverable even if ultimately not admissible for the purpose of any perceived effort on the part of Plaintiffs to impute Heritage's positions and/or intent onto the Legislature. In arguing that I cannot consider Heritage's intent as probative of the Legislature's intent, Heritage appears to conflate relevance and admissibility. That is, Heritage appears to argue that because Heritage's intent cannot be imputed to the Legislature at trial for purposes of admissibility, it also must not be relevant for discovery purposes. Those standards, however, are different, and evidence need not be admissible at trial to be relevant, and, therefore, discoverable. *See* Fed. R. Civ. P. 26(B)(1); *see also Adkins v. Christie*, 488 F.3d 1324, 1330 (11th Cir. 2007) (quoting the Federal Rules of Civil Procedure).

### b. The subpoenas are proportional to the needs of the case.

Rule 26 requires that discovery demands be proportional "to the needs of the case." Fed. R. Civ. P. 26(b)(1). Heritage argues that the burden of responding to the subpoenas is not

---

[1] At the discovery stage, the parties are held to an even more lenient standard than provided for in the Federal Rules of Evidence. *See* Fed. R. Civ. P. 26(B)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

5

proportional because the information requested is not relevant to Plaintiffs' underlying case and because Plaintiffs could alternatively obtain the information directly from the Legislature. (DE 8 at 10). In support, it argues that other courts have required parties seeking to enforce a subpoena to exhaust other avenues of obtaining the information desired in "First Amendment and journalistic cases," and urges that a similar exhaustion requirement should be applied here. (*Id.* at 11). In support, Heritage relies upon a series of nonbinding decisions. *See Id.* at 11, citing *Zerilli v. Smith*, 656 F.2d 705, 714 (D.C. Cir. 1981); *Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9 D.D.C. 2015); *Eugster v. City of Spokane*, 91 P.3d 117, 123 (Wash Ct. App. 2004).

Both of Heritage's arguments are without merit. With respect to Heritage's first argument, as already explained above, the documents Plaintiffs request are relevant to Plaintiffs' case in that they seek evidence regarding the events leading up to the passage of Senate Bill 90 that may bear on Plaintiffs' intentional discrimination claims. *See Greater Birmingham Ministries*, 992 F.3d at 1322. As to Heritage's second argument, it is true that journalists and reporters have a First Amendment privilege that protects their refusal to disclose the identity of confidential informants. *See Price v. Time, Inc.*, 416 F.3d 1327, 1343 (11th Cir. 2005). And one relevant factor courts consider when determining whether to uphold that privilege is the exhaustion of alternative sources of information. *See Zerilli*, 656 F.2d at 713 ("[R]eporters should be compelled to disclose their sources only after the litigant has shown that he has exhausted every reasonable alternative source of information."). However, Heritage is not a member of the press, nor do the subpoenas request the disclosure of confidential information. As such, the privilege is not applicable under the circumstances presented here. Because Heritage has not pointed to any financial or other burden it would face by complying with Plaintiffs' subpoenas, and because Plaintiffs offered to negotiate with Heritage to further narrow the scope of their requests and Heritage declined, I am not

persuaded by Heritage's arguments that Plaintiffs' subpoenas impose an undue burden. (DE 1 at 14).

### c. The First Amendment associational privilege does not apply to the information Plaintiffs seek.

Finally, Heritage argues that the subpoenas require the production of documents protected under the associational privilege of the First Amendment. (DE 8 at 12). It asserts that "[g]ranting this motion to compel would chill the First Amendment rights of countless organizations if every time a law is challenged, it subjects them to non-party discovery requests about their petitioning from their ideological opponents." (*Id.* at 15).

The associational privilege protects against compelled disclosure that would adversely affect an organization by "induc[ing] members to withdraw . . . and dissuading others from joining because of fear of exposure." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463 (1958). The privilege is primarily invoked when a party seeks disclosure of an association's member or donor list. *See, e.g., id.* The party seeking to invoke the associational privilege bears the burden of making a *prima facie* showing of infringement on the right by the requested discovery. To do so, the party must demonstrate a "reasonable probability that the compelled disclosure . . . will subject them to threats, harassment, or reprisals from either Government officials or private parties." *Buckley v. Valeo*, 424 U.S. 1, 74 (1976).

Here, Heritage has failed to make the required *prima facie* showing of infringement of its First Amendment associational privilege. First, Plaintiffs do not seek to reveal the identities of any Heritage members or donors. (*See* DE 1 at 10). As such, the subpoenas do not seek disclosure of the information typically covered by the associational privilege. Moreover, Heritage has failed to demonstrate how disclosure of the *specific* information Plaintiffs request—Heritage's external communications with government officials related to Senate Bill 90—would subject its members

to "threats, harassment, or reprisals" from the Government or private individuals. *See Buckley*, 424 U.S. at 74. Heritage cites generally the proposition that "groups have experienced boycotts by virtue of their views," but it does not explain how compliance with Plaintiffs' subpoenas, which do not seek any internal or confidential communications that reflect its members' private views, would lead to this result. Moreover, to the extent that Heritage is concerned about the production of any specific documents, it may seek a protective order designating those documents as confidential. For these reasons, Heritage has not made a *prima facie* showing that compliance with Plaintiffs' subpoenas would infringe its First Amendment rights.

## IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion to Compel (DE 1) is **GRANTED**.

**SIGNED** in Chambers, at West Palm Beach, Florida, this 19th day of October, 2021.

_____
Donald M. Middlebrooks
United States District Judge

cc: Counsel of Record